## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TREVIS BUFFORD,

  Plaintiff,

  v.

FULTON COUNTY SHERIFF'S OFFICE, *et al.*,

  Defendants.

Civil Action No.
1:24-cv-03452-SDG

## OPINION AND ORDER

This case is before the Court on the motions to dismiss filed by Defendants Fulton County Sheriff's Office (FCSO), Patrick Labat, Louis Brown,[1] and Curtis Clark [ECFs 14, 15, 16, 18]. Defendants also filed a motion to stay preliminary deadlines during the pendency of their motions to dismiss [ECF 17].[2] Plaintiff Trevis Bufford opposed Defendants' motions [ECFs 19, 20]. For the following reasons, the motions to dismiss filed by FCSO, Labat, and Clark are **GRANTED**, and Brown's motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

---

[1]  Brown's name was incorrectly listed on the docket as "Louise Brown."

[2]  Considering that Defendants' requested stay was already provided by the Court's Standing Order, *see* ECF 6, ¶ II(c), and that this Order resolves the pending motions to dismiss, Defendants' motion to stay is **DENIED AS MOOT**.

## I.    Background[3]

This is a civil rights case brought under federal and state law regarding an alleged excessive force incident at the Fulton County South Annex Jail in October 2023.[4] At the time of the events that form the basis for the complaint, Bufford was a pretrial detainee being held at the Jail, located in Union City, Georgia.[5] Labat is the Sheriff of Fulton County, Georgia, whose responsibilities include the administration and operation of the FCSO, which in turn is responsible for the administration and operation of the Jail.[6] Clark is a colonel with the FCSO and the chief jailer responsible for the operation of the Jail.[7] Brown is a deputy sheriff employed as a supervisor at the Jail.[8]

On or about October 5, 2023, Brown was the supervisor for the 3-11 shift at the Jail.[9] Bufford and several other inmates were handcuffed and shackled in H1

---

[3]   At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

[4]   ECF 10, ¶ 33.

[5]   *Id.* ¶¶ 33, 90.

[6]   *Id.* ¶¶ 4, 7.

[7]   *Id.* ¶ 10.

[8]   *Id.* ¶ 13.

[9]   *Id.* ¶ 33.

cell.[10] Brown entered the cell and fired a shotgun.[11] Then, while Bufford was on the ground and in the fetal position, Brown kicked Bufford in the face.[12] Several other unnamed deputies (the Bystander Officers[13]) were present and witnessed Brown's use of force, but none took action to protect Bufford.[14]

Due to a pre-existing medical condition, this alleged use of force caused Bufford to suffer long-term pain in his head and ears.[15] Bufford has also experienced psychological injuries, requiring treatment with psychotropic medication.[16] At the time of the incident, Brown refused to take Bufford to the hospital for treatment.[17]

---

[10]  *Id.* ¶ 34.

[11]  *Id.* ¶ 35.

[12]  *Id.*

[13]  "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The Bystander Officers are not described with any specificity, other than that they were present during the alleged excessive force incident. ECF 10, ¶ 44. Accordingly, the Court need not evaluate the claims against the Bystander Officers at this time.

[14]  *Id.* ¶ 44.

[15]  *Id.* ¶ 49.

[16]  *Id.* ¶ 50.

[17]  *Id.* ¶ 43.

Following the incident, Brown allegedly misconstrued the facts in his incident report.[18] Bufford filed a formal complaint regarding Brown's use of force, but Brown was not disciplined for the incident.[19]

In his amended complaint, Bufford brings nine claims against the various Defendants: (1) excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 against Brown and the Bystander Officers; (2) failure to train and supervise pursuant to § 1983 against FCSO; (3) failure to train and supervise pursuant to § 1983 against FCSO, Labat, and Clark; (4) assault, battery, and negligence pursuant to Georgia law against Brown and the Bystander Officers; (5) intentional infliction of emotional distress (IIED) pursuant to Georgia law against Brown and the Bystander Officers; (6) vicarious liability pursuant to Georgia law against FCSO, Labat, and Clark; (7) excessive force in violation of the Fourteenth Amendment pursuant to (presumably) § 1983 against Brown and the Bystander Officers; (8) punitive damages against the individual defendants (presumably Labat, Clark, Brown, and the Bystander Officers); and (9) attorneys' fees pursuant to 42 U.S.C. § 1988 and Georgia law.[20]

---

[18]  *Id.* ¶ 38.

[19]  *Id.* ¶¶ 70, 71.

[20]  *See generally id.*

FCSO, Labat, Clark, and Brown each moved to dismiss the amended complaint. FCSO seeks dismissal on the ground that, under Georgia law, it is not an entity capable of being sued.[21] Labat and Clark seek dismissal primarily on the grounds that (1) the amended complaint is a "shotgun pleading," and (2) the claims against them are barred by sovereign immunity and qualified/official immunity.[22] Brown also seeks dismissal on sovereign and qualified/official immunity grounds.[23]

## II.    Applicable Legal Standards

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[21]    ECF 14.

[22]    ECFs 15, 18.

[23]    ECF 16.

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when the plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The principle that the Court must accept all well-pleaded facts as true at this stage does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.    Discussion

Defendants present several distinct arguments for dismissal, as well as several interrelated dismissal arguments. After careful review of the parties' submissions, the Court arrives at the following conclusions: (1) FCSO is not an entity capable of being sued under Georgia law, and therefore dismissal is appropriate; (2) the amended complaint is not a "shotgun pleading" that requires re-pleading; (3) the claims against Labat, Clark, and Brown in their official capacities are barred by sovereign immunity and therefore dismissed; (4) at this stage, Brown is not entitled to qualified immunity on the § 1983 claim; (5) at this

stage, Brown is not entitled to official immunity on the state law claims, except the negligence claim; (6) Bufford has not stated a § 1983 claim against Labat and Clark; and (7) Bufford's punitive damages and attorneys' fees claims remain viable based on his remaining § 1983 and state law claims.

### A.  FCSO is not an entity capable of being sued under Georgia law.

Whether an entity (other than an individual or a corporation) is capable of being sued in federal court is determined by the law of the state in which the court is located—in this case, Georgia. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). Under Georgia law, only three types of legal entities can sue or be sued: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (quoting *Ga. Insurers Insolvency Pool v. Elbert Cnty.*, 258 Ga. 317, 368 (1988)).

Georgia law provides that "[a] county is designated under the law as 'a body corporate,' and as such it may sue and be sued." *Harris v. Lawson*, No. 7:08-CV-70 (HL), 2008 WL 4003999, at *2 (M.D. Ga. Aug. 27, 2008) (citing *Lowndes Cnty. v. Dasher*, 229 Ga. 289, 292 (1972)). However, there is no similar provision in the Georgia Constitution or Code that designates a sheriff's office as a legal entity. *Id.* The sheriff is "a constitutionally created office elected by the voters" with "the power to hire deputies," but those deputies "work for the sheriff himself, not a

7

'sheriff's office.'" *Id.* (citing Ga. Const. Art. 9, § 1, ¶ III(a); O.C.G.A. § 15–16–23; *Keener v. Kimble*, 170 Ga. App. 674, 675 (1984)). Consistent with this distinction, courts have frequently held that sheriff's departments are not legal entities capable of suit under Georgia law. *See, e.g.*, *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006); *Bailey v. Fair & Walker Unit Owners Ass'n, Inc.*, No. 1:22-CV-00098-ELR, 2022 WL 18780991, at *3 (N.D. Ga. Sept. 20, 2022) (collecting cases dismissing claims against FCSO). Because FCSO is not a legal entity capable of being sued under Georgia law, Bufford cannot maintain his claims against it here. Accordingly, FCSO is dismissed from this lawsuit.

## B.  The amended complaint is not a "shotgun pleading" that requires re-pleading.

Labat and Clark seek to dismiss the amended complaint as a "shotgun pleading." A "shotgun pleading" is one that does "not provide a short and plain statement of a claim as required by Rule 8." *Brown v. Air Line Pilots Ass'n*, No. 19-14194, 2020 WL 2175959, at *1 (11th Cir. May 6, 2020) (citing *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018)). A shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). "It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty

which factual allegations give rise to which claims for relief." *Jackson*, 898 F.3d at 1356.

Shotgun pleadings "patently violate" the federal pleading standards. *Id.*; *see also Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) ("Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so."). Accordingly, when a district court receives a shotgun pleading, the court "should strike it and instruct counsel to replead the case," rather than "parse out such incomprehensible allegations." *Estate of Bass*, 947 F.3d at 1358 (citation omitted).

The Eleventh Circuit has identified four categories of shotgun pleadings. *Weiland*, 792 F.3d at 1321–23. According to Defendants, two of those categories are relevant here: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" and (2) "a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1321–23.

In reviewing the amended complaint, it is clear that Bufford has violated the first rule of *Weiland*. The amended complaint contains nine counts, each of which incorporate the allegations of all preceding counts.[24] While this method of pleading may be appropriate for Bufford's derivative liability claims, the Court cannot discern why, for example, the Fourteenth Amendment excessive force claim against Brown and the Bystander Officers in Count 7 is dependent upon the vicarious liability allegations against Labat and Clark in Count 6.[25]

However, the Court does not agree that the amended complaint violates the second rule of *Weiland*. To be sure, the amended complaint does contain some vague and conclusory allegations. But the factual allegations are generally tied to particular causes of action, which Bufford has in fact separated into different counts. *Cf. id.* at 1322–23 ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). For the most part, Bufford alleges enough specific, relevant facts to support his more conclusory allegations.[26]

---

[24] *See generally* ECF 10.

[25] *Id.* ¶ 89 (incorporating all preceding paragraphs).

[26] Notably, this does not include his § 1983 claim against Labat and Clark, discussed in Section III.F., *infra*.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* While the amended complaint is not a model of clarity, neither is it a "rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that [this plaintiff is] claiming." *Cramer v. Florida*, 117 F.3d 1258, 1261 (11th Cir. 1997); *see also Weiland*, 792 F.3d at 1324 ("[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count."). Defendants and the Court have identified the relevant facts and claims for relief in the amended complaint without much difficulty. Therefore, the Court concludes that the form of Bufford's allegations, standing by itself, is not a reason to require re-pleading.

### C.    The claims against Labat, Clark, and Brown in their official capacities are barred by sovereign immunity.

Bufford brings several claims against Labat, Clark, and Brown: Counts 1 and 7 (§ 1983 excessive force against Brown); Count 3 (§ 1983 failure to train and supervise against Labat and Clark); Count 4 (assault, battery, and negligence against Brown); Count 5 (IIED against Brown); Count 6 (state law vicarious liability against Labat and Clark); as well as accompanying claims for punitive damages and attorneys' fees in Counts 8 and 9. However, it is not clear from the

amended complaint which claims are brought against these Defendants in their official capacities. Labat, Clark, and Brown are named in their individual and official capacities, but Bufford does not distinguish which counts are individual capacity claims and which are official capacity claims.[27] This is a significant distinction, as "suits against public employees in their personal capacities involve official immunity," whereas "suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity." *Donaldson v. Dep't of Transp.*, 262 Ga. 49, 56 (1992) (Hunt, J., concurring) (explaining Georgia law); *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (under federal law, state officials sued in their official capacity are protected by Eleventh Amendment sovereign immunity). Erring on the side of caution, the Court will address the claims against Labat, Clark, and Brown in both capacities—the official capacity claims will be addressed in this section, and the individual capacity claims will be addressed in the following sections.

Construing the amended complaint as alleging claims against Labat, Clark, and Brown in their official capacities presents two separate but related sovereign immunity questions: (1) whether Bufford may pursue any claims against Labat, Clark, and Brown in their official capacities, and (2) whether any of Bufford's

---

[27]   *See generally* ECF 10. Nor is Bufford's opposition brief illuminating on this point. *See generally* ECF 20.

claims can only be brought as an official capacity claim. The Court will address each in turn.

### 1.    Claims Against Labat, Clark, and Brown in Their Official Capacities

As previously noted, claims against Labat, Clark, and Brown in their official capacities are in reality claims against the State of Georgia, which implicates Georgia's sovereign immunity under state and federal law. Under Georgia law, sovereign immunity bars an official capacity claim unless the immunity has been waived. *Cameron v. Lang*, 274 Ga. 122, 126 (2001). Waiver "must be established by the party seeking to benefit from that waiver." *Bd. of Regents of Univ. Sys. of Ga. v. Daniels*, 264 Ga. 328, 328 (1994). Bufford has made no such showing here; therefore, his state law claims against Labat, Clark, and Brown in their official capacities are barred by sovereign immunity.

The result is the same under federal law. "The State of Georgia has not waived its Eleventh Amendment immunity from suits in federal court under § 1983." *Bolton v. Wood*, 682 F. Supp. 3d 1304, 1324 (N.D. Ga. 2023) (citing, *inter alia*, Ga. Const. art. I, § 2, ¶ IX(f); O.C.G.A. § 50-21-23(b)). Nor did Congress abrogate states' Eleventh Amendment sovereign immunity in enacting § 1983. *Schopler v. Bliss*, 903 F.2d 1373, 1379 n.4 (11th Cir. 1990) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986)). Thus, to the extent Bufford is bringing a federal law claim against Labat, Clark, and Brown in

their official capacities, such a claim is barred by Georgia's Eleventh Amendment sovereign immunity.

### 2. Bufford's vicarious liability claim in Count 6 is an official capacity claim barred by sovereign immunity.

It is unclear what Bufford's vicarious liability claim in Count 6 is even alleging. Labat and Clark assume that Bufford is pursuing direct claims of IIED against them.[28] While Bufford's opposition brief is not particularly helpful on this point, a close reading of the amended complaint shows that Count 6 is a vicarious liability claim against Labat and Clark based on Bufford's state law claims against Brown and the Bystander Officers (assault, battery, negligence, and IIED).[29]

Under Georgia law, "sheriffs may be liable in their official capacity for a deputy's [tortious acts] in performing an official function." *Gilbert v. Richardson*, 264 Ga. 744, 754 (1994); *see also Seay v. Cleveland*, 270 Ga. 64, 66 n.1 (1998) (citing *Gilbert*, 264 Ga. at 754) ("[A] sheriff sued in his official capacity may be held liable for the negligent performance of ministerial or discretionary acts of his employees only to the extent the county has waived sovereign immunity because he can only be sued in his official capacity under respondeat superior."). Therefore, Bufford's

---

[28]   ECF 15-1, at 15–17; ECF 18-1, at 14–16.

[29]   ECF 10, ¶ 88 ("[A]s a matter of Georgia law, Defendants Fulton Sheriff's Office, Patrick Labat, & Col. Curtis Clark are vicariously liable for all conduct of, or attributable to, Defendants Brown and Bystander Sheriff's Deputies.").

vicarious liability claim against Labat and Clark, based upon the alleged tortious acts of Brown and the Bystander Officers, can only be brought against Labat and Clark in their official capacities.

The problem with that claim is twofold. First, Clark is not the Fulton County Sheriff, and therefore Georgia law does not consider him the employer of Brown or the Bystander Officers. *Gilbert*, 264 Ga. at 754. Second, the vicarious liability claim against Labat in his official capacity as the Fulton County Sheriff is barred by sovereign immunity. *Seay*, 270 Ga. at 66 n.1. Bufford has made no showing of a sovereign immunity waiver. *Bd. of Regents*, 264 Ga. at 328. Accordingly, Bufford has failed to state a vicarious liability claim against Clark, and the vicarious liability claim against Labat is barred. Count 6 is dismissed.

Remaining are Bufford's federal and state law claims against Labat, Clark, and Brown in their individual capacities: Counts 1 and 7 (§ 1983 excessive force against Brown); Count 3 (§ 1983 failure to train and supervise against Labat and Clark); Count 4 (assault, battery, and negligence against Brown); and Count 5 (IIED against Brown). Because these are individual capacity claims, they implicate qualified or official immunity rather than sovereign immunity, and they are addressed in the following sections.

## D.    At this stage, Brown is not entitled to qualified immunity on Bufford's § 1983 claim.

Section 1983 creates no substantive rights. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id*. To succeed on this claim Bufford "must prove that [ ]he was deprived of a constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Bufford does not appear to dispute that Brown was acting in his discretionary authority in overseeing detainees while working as a shift supervisor at the Jail.[30] *See Meshal v. Comm'r, Ga. Dep't of Pub. Safety*, 117 F.4th 1273, 1283 (11th Cir. 2024) (quoting *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017)) ("Discretionary authority encompasses 'all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'").

---

[30]    *See generally* ECF 20; *see also* ECF 10, ¶ 13 (Brown "is a supervisor responsible for the operation of the Fulton County Jail."); *id.* ¶ 33.

Once officials establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Officials are not entitled to qualified immunity if their actions (1) violated a constitutional right; and (2) "the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). If the plaintiff prevails on both prongs of this test, then the official is not entitled to qualified immunity. "These two steps do not have to be analyzed sequentially; if the law was not clearly established, we need not decide if the Defendants actually violated the Plaintiffs' rights, although we are permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (citing, *inter alia*, *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Ordinarily, the defense of qualified immunity is raised at the summary judgment stage, but it may be considered on a motion to dismiss. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). However, a motion to dismiss on qualified immunity grounds may only be granted when the "complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The Court concludes that at this stage Bufford has made a sufficient showing to overcome Brown's qualified immunity: Brown violated a clearly established constitutional right if, as alleged, he kicked Bufford in the face and fired a shotgun in the close-quartered cell block.

### 1.   Brown's alleged use of force amounts to a constitutional violation.

To overcome qualified immunity, Bufford must first show that Brown's alleged use of force "violated a constitutional right." *Corbitt*, 929 F.3d at 1311. In § 1983 cases, the Court begins by "identifying the specific constitutional right[s] allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker v. McCollan*, 443 U.S. 137, 140 (1979) (noting "[t]he first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In this case, Bufford alleges two constitutional violations: (1) the right to be free from unreasonable seizure and excessive force under the Fourth Amendment, and (2) the right to be free from excessive force under the Fourteenth Amendment.[31] Both claims arise from the same conduct: Brown's alleged firing of a shotgun in the small cell block and kicking Bufford in the face while he was shackled and laying in a fetal position.[32]

Important here is determining which constitutional provision governs the analysis. While the Fourth Amendment prevents the use of excessive force during arrests, the Eleventh Circuit analyzes the use of force against pretrial detainees—those who "exist in the in-between"—solely under the "Fourteenth Amendment's

---

[31]   ECF 10, ¶¶ 39, 89.

[32]   *Id.* ¶ 90.

ambit." *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 952 (11th Cir 2019). Because Bufford was a pretrial detainee,[33] his excessive force claim is considered under the Fourteenth Amendment. As such, the proper inquiry is whether "the alleged conditions amount to punishment of the detainee" before guilt is properly established under due process of law. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). As a general matter, the use of force against a pretrial detainee must not be "more severe than is necessary to subdue him," or amount to punishment. *Id.*

Since the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court measures Fourteenth Amendment excessive force claims using an objective reasonableness standard. *See id.* at 396 (requiring courts to employ an objective standard that disregards the "defendant's [subjective] state of mind"). Under this analysis, an official violates a pretrial detainee's constitutional rights when "the force purposely or knowingly used against [the detainee is] objectively unreasonable." *Id.* at 396–97. Objective reasonableness turns on the particular facts and circumstances of the case and considers only the perspective of "a reasonable officer on the scene." *Id.* at 397.

The question, then, is whether Brown's use of force was objectively unreasonable. In making this determination, the Court must consult several non-

---

[33]    *Id.*

exhaustive factors: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; (6) and "whether the plaintiff was actively resisting." *Id.* at 397.

As currently alleged, every factor suggests Brown's use of force was objectively unreasonable. The first factor is perhaps the most telling for present purposes: The amended complaint lacks any facts suggesting the need for force. There is no indication that Bufford was resisting Brown; rather, Bufford was already handcuffed and shackled when Brown fired the shotgun, and Bufford was laying on the ground in fetal position when Brown kicked him in the face.[34]

The second factor also weighs in favor of Bufford, who allegedly suffered hearing loss, long-term pain in his head and ears, and psychological injury requiring medication following the incident.[35] As to the third factor, no alleged facts suggest that Brown tempered the amount of the force he used.[36] Rather, Brown allegedly employed force while Bufford was already restrained.

---

[34] *Id.* ¶¶ 34–36.

[35] *Id.* ¶¶ 48–50.

[36] Brown's assertion that the shotgun was a "less-lethal" shotgun containing a "thunder round" is not alleged in the amended complaint and is therefore not before the Court on the motions to dismiss. *See* ECF 16-1, at 3 n.2.

The analysis of the fourth, fifth, and sixth factors—the severity of the security problem, the threat reasonably perceived by Brown, and whether Bufford was actively resisting—is largely repetitive of the first: nothing in the amended complaint, viewed in the light most favorable to Bufford, suggests that the shackled, handcuffed, and non-resisting Bufford posed a security threat in reality or as might reasonably have been perceived. Whatever risk Bufford conceivably posed in this state objectively could not have justified Brown's alleged use of force.

Because the *Kingsley* factors all weigh in Bufford's favor, the Court concludes that Bufford has adequately alleged a Fourteenth Amendment violation by Brown.

### 2.    Brown's conduct violated a clearly established right.

The second prong of the qualified immunity test requires Bufford to show that the violation of his constitutional right was "clearly established." *Corbitt*, 929 F.3d at 1311–12.

For a right to be clearly established, it must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1311. This analysis is made "in light of the specific context of the case" and must avoid generality; the dispositive issue is whether the "violative nature of [the] *particular* conduct is clearly established." *JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 (11th Cir. 2018); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We have

repeatedly told courts . . . not to define clearly established law at a high level of generality."). However, a right may be "sufficiently clear" even where the specific action in question has not been previously held unlawful. *Corbitt*, 929 F.3d at 1312. Rather, the "salient question" is whether the "state of the law gave the defendant[ ] 'fair warning'" that his conduct was unconstitutional. *Id.* (quoting *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

### a.    Fair Warning of Unconstitutional Conduct

The Eleventh Circuit recognizes three ways in which defendants may be given "fair warning" of the unconstitutionality of their conduct. *Jones*, 857 F.3d at 852. First, a plaintiff may point to "materially similar" binding precedent from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. *Corbitt*, 929 F.3d at 1312 (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 n.6 (11th Cir. 2007)). In assessing material similarity, the Court considers whether the factual scenario of the present case is "fairly distinguishable" from the "circumstances . . . in a previous case." *Jones*, 857 F.3d at 852. In other words, "fair warning" stems from judicial precedent "tied to particularized facts." *Corbitt*, 929 F.3d at 1312.

Second, a plaintiff may invoke a "broader clearly established principle" that should "control the novel facts" of the situation. *Jones*, 857 F.3d at 852. To ensure "fair warning" to the official, this prong requires caselaw demonstrating the principle with "obvious clarity" such that "every objectively reasonable

government official facing the circumstances would know that the official's conduct" would violate the right. *Id.*; *see also Corbitt*, 929 F.3d at 1311 ("[O]fficials are not obligated to be creative or imaginative in drawing analogies from previously decided cases."). "Fair warning" may also be satisfied when "the reasoning, though not the holding of prior cases . . . sends the same message to reasonable officers in novel factual situations." *Jones*, 857 F.3d at 852.

Third, a plaintiff may demonstrate that a right is clearly established when the defendant's conduct "lies so obviously at the very core of what the [law] prohibits," such that the conduct's unlawfulness was "readily apparent to the official, notwithstanding the lack of case law." *Id.* Conduct may fall within the "obvious-clarity" exception whenever the conduct is "so bad that case law is not needed to establish that the conduct cannot be lawful." *Id.* However, the obvious-clarity exception is narrow. *Priester v. City of Riviera Beach*, 208 F.3d 919, 926–27 (11th Cir. 2000); *see also Jones*, 857 F.3d at 852.

### b.    Broader Clearly Established Principle

Though the burden is on Bufford to show that his right was clearly established, he has failed to direct the Court to "materially similar" precedent from the Supreme Court, the Eleventh Circuit, or the Supreme Court of Georgia,[37] nor

---

[37]    *See generally* ECF 20.

has the Court's own research revealed as much. Thus, the only way for Bufford to avoid dismissal is to show that Brown had "fair warning" through either (1) a broader clearly established principle or (2) the "obvious clarity" exception. *Corbitt*, 929 F.3d at 1315.

In the Eleventh Circuit, one broad principle is clear: "[A]n officer may not continue to use force after a detainee has clearly stopped resisting." *Piazza*, 923 F.3d at 955. The Eleventh Circuit expanded on this principle in *Danley v. Allen*, 540 F.3d 1298 (11th Cir. 2008), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010), holding that "when jailers continue to use substantial force against a prisoner who has clearly stopped resisting . . . [the] use of force is excessive." *Id.* at 1309. This principle applies whether the detainee "bec[a]me compliant, has been subdued, or . . . is otherwise incapacitated." *Id.* Whatever the reason, once resistance subsides, additional force is considered excessive. *See id.*; *see also Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued."); *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the . . . Fourteenth Amendment[ ]").

The Eleventh Circuit has applied this principle to various factual scenarios involving excessive force. For example, in *Quinette v. Reed*, 805 F. App'x 696 (11th Cir. 2020), the court considered whether an officer who shoved a non-resistant pretrial detainee to the ground with sufficient force to break his hip constituted excessive force in violation of Fourteenth Amendment. *Id.* at 699. Applying the *Kingsley* factors, the court denied qualified immunity in part because the force was inflicted against a non-resistant detainee. *Id.* at 704. In *Danley*, the court considered an excessive-force claim in which an official used pepper spray on a detainee and then held him in a poorly ventilated cell without allowing him to clean off. 540 F.3d at 1304. Because the detainee had resisted the officer, the court approved the initial use of pepper spray as a permissible use of force; however, once the prisoner stopped resisting and "there [was] no longer a need for the force," the court concluded that the detainee's confinement in the poorly ventilated cell while covered in pepper spray constituted excessive force. *Id.* at 1309–10. Similarly, in *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008), the Court held that one "single punch constitute[s] excessive force" against a non-resisting individual.[38] *Id.* at 1330.

---

[38] Although the court resolved *Hadley* within the Fourth Amendment context, the Eleventh Circuit has since applied this principle in the Fourteenth Amendment context. *See Quinette*, 805 F. App'x at 705 (applying *Hadley* to a pretrial detainee's excessive force claim).

The method of force used against the detainee need not be the "mirror-image" of the specific facts establishing excessive force in other cases. *Quinette*, 805 F. App'x at 704. Instead, the dispositive question here is whether the law gave Brown "fair warning" that his use of force—firing a shotgun and kicking a shackled, handcuffed, and non-resisting detainee while he was laying in the fetal position—violated the Fourteenth Amendment. Based on the Eleventh Circuit's precedent in *Quinette*, *Hadley*, and *Danley*, the Court concludes that Brown had fair warning that his alleged conduct was unconstitutional. [39]

Because Bufford adequately alleged a Fourteenth Amendment violation by Brown, and this violation was clearly established in Eleventh Circuit caselaw, Brown is not entitled to qualified immunity at this stage. Therefore, Brown's motion to dismiss is denied as to Bufford's § 1983 claim.

### E.    At this stage, Brown is not entitled to official immunity on Bufford's state law claims, except the negligence claim.

Bufford also brings several state law claims in Counts 4 and 5 against Brown and the Bystander Officers for assault, battery, negligence, and IIED.[40] Brown

---

[39]    Because the Court concludes there is a broader clearly established principle, it is unnecessary to decide here whether the conduct was "egregious enough" to fall within the "obvious-clarity" exception. *See Quinette*, 805 F. App'x at 705.

[40]    ECF 10, ¶¶ 78–85.

seeks to dismiss these claims on the ground that they are barred by official immunity.[41]

Under Georgia law, "[t]he doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption." *Everson v. Dekalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 667 (2018). Georgia courts have defined discretionary acts as those "call[ing] for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86 (2003) (quoting *Harvey v. Nichols*, 260 Ga. App. 187, 191 (2003)).

### 1.    Discretionary Actions

As previously noted, Bufford does not appear to dispute that Brown was performing a discretionary act in overseeing detainees while working as a shift supervisor at the Jail. Indeed, Georgia courts have frequently held that an officer's use of force is a discretionary act. *See, e.g., Upshaw v. Columbus Consol. Gov't*, 369 Ga. App. 524, 529 n.6 (2023) (striking a suspect with a police vehicle); *Kidd v. Coates*, 271 Ga. 33, 33 (1999) (firing a gun at a suspect). Therefore, to overcome Brown's

---

[41]    ECF 16-1, at 16.

official immunity, Bufford must allege facts demonstrating that Brown acted with

malice.

### 2.    Actual Malice

The Court concludes that Bufford has sufficiently alleged that Brown acted

with malice. In the context of official immunity, the Georgia Supreme Court has

interpreted the malice requirement narrowly:

> "Actual malice" requires a deliberate intention to do wrong. It does
> not include "implied malice," i.e., the reckless disregard for the rights
> or safety of others. Instead, actual malice requires more than
> "harboring bad feelings" or "ill will" about another; rather, ill will
> must also be combined with the intent to do something wrongful or
> illegal. Moreover, the phrase "actual intent to cause injury" has been
> defined in a tort context to mean an actual intent to cause harm to the
> plaintiff, not merely an intent to do the act purportedly resulting in
> the claimed injury. This definition of intent contains aspects of malice,
> perhaps a wicked or evil motive.

*Wyno v. Lowndes Cnty.*, 305 Ga. 523, 531 (2019) (cleaned up). Where officers use

force against an individual intentionally and without justification, "then they act[ ]

solely with the tortious 'actual intent to cause injury.'" *Kidd*, 271 Ga. at 33 (citing

*Gardner v. Rogers*, 224 Ga. App. 165, 169 (1996)).

In *Gardner*, the Georgia Court of Appeals held that, construing the facts in

the plaintiff's favor, a deputy sheriff's use of force was not objectively reasonable

under the Fourth Amendment where the deputy told the plaintiff she was not

under arrest but then proceeded to reach through the plaintiff's front doorway to

place her in a choke-hold; beat the plaintiff and twisted her arm behind her back,

threatening to break it; and hit the plaintiff's head on his patrol car. 224 Ga. App. at 166–67. The court reasoned that, even if the deputy had probable cause to arrest the plaintiff, "he certainly did not have cause to use the degree of force he allegedly did." *Id.* at 168 (holding that the deputy was not entitled to qualified immunity under § 1983). Based on this conclusion, the court in *Gardner* further held that a jury could conclude that the deputy's conduct was not justified, and therefore the deputy was not entitled to official immunity on the plaintiff's state law assault and battery claims "because the jury could conclude that [the deputy's] actions were intentional and carried out with wilfulness, malice or corruption, in violation of a known right." *Id.*

Like in *Gardner*, the Court has already concluded that Brown's alleged use of force against Bufford was not objectively reasonable.[42] Likewise, a jury could conclude that Brown's use of force was not justified, and therefore a jury could further conclude that Brown's actions were intentional and carried out with willfulness or malice: there are few reasons to kick a non-resisting detainee in the face that *wouldn't* involve an actual intent to cause injury. Accordingly, Brown is not entitled to official immunity on Bufford's assault and battery claims. Because Bufford's IIED claim is premised on these same facts,[43] and Brown has not made

---

[42]  *See* Section III.D.1., *supra.*

[43]  ECF 10, ¶¶ 81–85.

any argument that Bufford's allegations do not otherwise state an IIED claim,[44] the

Court concludes that Brown is not entitled to official immunity on Bufford's IIED

claim at this stage either.

### 3.    Negligence

The sole tort claim alleged against Brown that cannot survive as alleged is

negligence. That is because only *ministerial* acts relating to official duties, not

discretionary ones as alleged here, are actionable for negligence. *See Barnett v.

Caldwell*, 302 Ga. 845, 848 (2018). A ministerial act is "commonly one that is simple,

absolute, and definite, arising under conditions admitted or proved to exist, and

requiring merely the execution of a specific duty," whereas a discretionary act

"calls for the exercise of personal deliberation and judgment, which in turn entails

examining the facts, reaching reasoned conclusions, and acting on them in a way

not specifically directed." *Id.* (quoting *Murphy v. Bajjani*, 282 Ga. 197, 199 (2007)).

As previously noted, Georgia courts have frequently held that an officer's

use of force is a discretionary act. While this determination must be made "on a

case-by-case basis," *id.*, there is no indication here that Brown was given

"directives [that] are so clear, definite, and certain as to merely require the

execution of a specific, simple, absolute, and definite duty, task, or action in a

specified situation without any exercise of discretion," and thus his decision to use

---

[44]    *See generally* ECF 16-1.

even an allegedly excessive amount of force in supervising Bufford and the other detainees was a discretionary one. *Id.*

Accordingly, Bufford cannot pursue a negligence claim based on Brown's performance of a discretionary act. Brown's motion to dismiss Counts 4 and 5 is granted as to the negligence claim but denied as to all others.

### F.   Bufford has not stated a § 1983 claim against Labat and Clark.

Bufford has also brought failure to train and supervise claims against Labat and Clark in Count 3. This is a difficult road to travel, as "[t]he standard by which a supervisor can be held liable for the actions of a subordinate is 'extremely rigorous.'" *Piazza*, 923 F.3d at 957 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall*, 610 F.3d 701).

Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on vicarious liability. *Id.* However, plaintiffs may bring a supervisory liability claim if there is a "causal connection" between a supervisor's actions and the alleged constitutional violation. *Id.*[45] There are various ways to show the necessary causal connection, including: "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct

---

[45]   Bufford does not allege that Labat or Clark personally participated in the unconstitutional conduct. *See Cottone*, 326 F.3d at 1360 (noting that supervisory liability may occur when the supervisor "personally participates in the alleged unconstitutional conduct").

the alleged deprivation, and he fails to do so"; "when a supervisor's custom or policy results in deliberate indifference to constitutional rights"; or "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."[46] *Cottone*, 326 F.3d at 1360 (cleaned up). A failure to train subordinates "may constitute a 'policy' giving rise" to supervisory liability. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

"[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (internal quotation marks and citations omitted). Indeed, a "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several [subordinates]." *Id.* (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1312 (11th Cir. 2011)) (alteration in original).

But that is precisely what Bufford has alleged here: a single incident in which Brown used excessive force on Bufford and other detainees. Bufford contends that "[p]ublicity regarding the Fulton County South Annex Sheriff's

---

[46]  The amended complaint does not allege that Labat and Clark directed Brown to use excessive force on Bufford, or that Labat and Clark knew that Brown would use excessive force on Bufford and failed to stop him. *See generally* ECF 10.

Deputies' use of excessive force against inmates"[47] put Labat and Clark on notice of the constitutional violations resulting from their policies or customs, but that is the kind of conclusory allegation that the Court need not credit here. *See Weiland*, 792 F.3d at 1329 n.21 (quoting *Twombly*, 550 U.S. at 557; *Connick v. Thompson*, 563 U.S. 51, 62 (2011)) (holding that a similar allegation was inadequate and required "factual enhancement" to show that the alleged incidents "gave rise to 'similar constitutional violations.'"). Bufford's allegation that he filed a formal complaint against Brown based on the incident, but Labat and Clark did not discipline Brown, is insufficient as well—an after-the-fact decision not to discipline Brown could not have caused the excessive force incident that had already occurred.

The remaining allegations against Labat and Clark—that they "have [a] *de facto* custom of failing to discipline sheriff's deputies who use excessive force against detainees in the Fulton County jail"; they "adopted official policies, practices and customs that provided for the failure to supervise and discipline Fulton County Sheriff's Deputies when they use excessive force"; and they "acted with deliberate indifference to the clearly established rights secured to Mr. Bufford under the United States Constitution"—are the sort of "formulaic recitation of the

---

[47]  *Id.* ¶ 69.

elements" of a supervisory liability claim that are inadequate to state a claim for relief. *Iqbal*, 556 U.S. at 681. Accordingly, Count 3 is dismissed.

### G. Bufford's punitive damages and attorneys' fees claims remain viable based on his remaining § 1983 and state law claims.

Lastly, Defendants move to dismiss Bufford's claims for punitive damages and attorneys' fees in Counts 8 and 9 on the grounds that Bufford cannot prevail on his substantive claims.[48] As a threshold matter, Georgia law allows for punitive damages where "the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences," O.C.G.A. § 51-12-5.1, and it also "allows recovery of attorney fees 'if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," *S. Med. Corp. v. Willis*, 194 Ga. App. 773, 774 (1990) (citing O.C.G.A. § 13-6-11). Likewise, punitive damages may be awarded on a § 1983 claim where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others," *Lambert v. Fulton Cnty.*, 253 F.3d 588, 597 (11th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)), and attorneys' fees may be awarded to the prevailing party under 42 U.S.C. § 1988.

---

[48]   ECF 15-1, at 23; ECF 16-1, at 19–20; ECF 18-1, at 22–23.

Of course, to obtain an award of punitive damages or attorneys' fees, Bufford must first prevail on an underlying tort claim. *See Johnson v. Johnson*, 323 Ga. App. 836, 842 (2013) (punitive damages pursuant to O.C.G.A. § 51-12-5.1); *Ellis v. Gallof*, 220 Ga. App. 518, 519 (1996) (attorneys' fees pursuant to O.C.G.A. § 13-6-11); *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1178 n.3 (11th Cir. 2009) (punitive damages under § 1983); 42 U.S.C. § 1988 (attorneys' fees under § 1983). Because Bufford's § 1983 and state law claims will proceed against Brown, Bufford's claims for punitive damages and attorneys' fees remain viable against him.

## IV. Conclusion

The motions to dismiss filed by FCSO, Labat, and Clark [ECFs 14, 15, 18] are **GRANTED**, and Brown's motion to dismiss [ECF 16] is **GRANTED IN PART and DENIED IN PART**. Count 2 (§ 1983 failure to train and supervise against FCSO), Count 3 (§ 1983 failure to train and supervise against FCSO, Labat, and Clark), and Count 6 (state law vicarious liability against FCSO, Labat, and Clark) are **DISMISSED**. Count 4 (assault, battery, and negligence against Brown) is **DISMISSED** as to the negligence claim only. FCSO, Labat, and Clark are **DISMISSED** as Defendants in this lawsuit.

What remains are the following claims against Brown only: Counts 1 and 7 (§ 1983 excessive force), Count 4 (assault and battery), Count 5 (IIED), as well as claims for punitive damages and attorneys' fees in Counts 8 and 9 relating to the

surviving substantive claims. Brown is **ORDERED** to file his answer to the remaining portions of the amended complaint within 14 days of this Order.

Defendants' motion to stay [ECF 17] is **DENIED AS MOOT**. Bufford and Brown are **DIRECTED** to file the Joint Preliminary Report and Discovery Plan required by LR 16.2, NDGa, within 30 days of Brown's answer to the amended complaint.

The Clerk of Court is **DIRECTED** to change Brown's name on the docket to "Louis Brown" and update the caption and docket of this case consistent with this Order.

**SO ORDERED** this 26th day of March, 2025.

Steven D. Grimberg
United States District Judge